**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

```
-----------------------------------------------
IN RE:                              )
                                    )        CHAPTER 13
JOSE M. ESPANOL, and                )
LUZ E. ESPANOL,                     )        CASE NO. 13-21318 (ASD)
                                    )
        DEBTORS.                    )        RE: ECF Nos. 12, 32, 83, 86 & 89
                                    )
-----------------------------------------------
```

**CONSOLIDATED MEMORANDUM AND ORDER**
**(I) DENYING CONFIRMATION OF DEBTORS' FIRST AMENDED**
**CHAPTER 13 PLAN,**
**(II) OVERRULING DEBTORS' OBJECTION TO CLAIM NUMBER 8, AND**
**(III) DENYING WELLS FARGO BANK'S MOTION FOR SUMMARY JUDGMENT**

ALBERT S. DABROWSKI, CHIEF UNITED STATES BANKRUPTCY JUDGE

## I. INTRODUCTION

The present matter calls upon the Court to determine whether a "due on sale clause"[1] in a mortgage covering the Debtors' principal residence triggered by a pre-petition default can be modified pursuant to a Chapter 13 Plan. In this bankruptcy case that issue is presented in a somewhat convoluted fashion through the Debtors' request for confirmation of their First Amended Chapter 13 Plan, a related Debtors' Objection to Claim, and in a Motion for Summary Judgment filed by the mortgagee.

For the reasons discussed hereinafter, confirmation of the Debtors' First Amended Chapter 13 Plan shall be denied, the Objection to Claim overruled, and the Motion for Summary Judgment denied.

## II. PROCEDURAL BACKGROUND

On June 27, 2013, the Debtors, Jose M. and Luz E. Espanol (hereinafter, the "Debtors") commenced the instant bankruptcy case through the filing of a petition under Chapter 13 of the United States Bankruptcy Code. On August 14, 2013, the Debtors filed their *First Amended Chapter 13 Plan* (hereinafter, the "Plan"), ECF No. 22.[2] In relevant part, the Plan calls for the Debtors to make monthly payments of $1,300.00 for 60 months,

---

[1] A "due on sale clause" is defined as "a contract provision which authorizes a lender, at its option, to declare due and payable sums secured by the lender's security instrument if all or any part of the property, or an interest therein, securing the real property loan is sold or transferred without the lender's prior written consent." 12 U.S.C. §1701j-3(a)(1).

[2] The Debtors initial Chapter 13 Plan was filed on August 12, 2013, ECF No. 19.

with the vast majority of the payments intended to be applied to the described $64,708.50[3] arrearage on a mortgage on the Debtors' residence located at 93 Lewis Hill Road, Coventry, Connecticut (hereinafter, the "Property") held by Wells Fargo Bank, N.A., successor by merger to Wells Fargo Bank Southwest, N.A., f/k/a Wachovia Mortgage, FSB, f/k/a World Savings Bank, FSB (hereinafter, the "Movant" or "Wells Fargo"').

On September 6, 2013, Wells Fargo filed an *Objection to the Debtors' Chapter 13 Plan* (hereinafter, the "Objection to Confirmation"), ECF No. 32, objecting to confirmation of the Plan on three grounds, only one of which is necessary to the Court's consideration and determination of the matter presently before the Court. In its Objection to Confirmation Wells Fargo argues that Bankruptcy Code §1325(a)(1), together with §1322(b)(2), bar confirmation of a debtor's plan where, as here, the Debtors are seeking to modify its rights as the holder of a mortgage secured only by a security interest in real property that is the Debtors' principal residence. The modification the Debtors are seeking is to bar Wells Fargo from enforcing its rights under a "due on sale clause."

In response to the Objection to Confirmation, on October 23, 2014, the Debtors filed *Debtors' Response to Well Fargo Bank, NA's Objection to the Debtors' Chapter 13 Plan*, ECF No. 76 (hereinafter, the "Debtors' Response"). In relevant part, the Debtors assert that they had not defaulted on the "due on sale clause" because the language of the mortgage made it conditional, not automatic; because Wells Fargo failed to give notice of acceleration as required by the mortgage prior to asserting a default; and that Wells Fargo

---

[3] In an *Objection To Proof of Claim Number 8*, ECF No. 83, filed later on November 21, 2013, the Debtor describes the full amount of the secured debt to be $211,120.97 (consistent with the Bank's proof of claim). The Debtor breaks down the debt further by describing the principal as $137,788.89 and the arrearage as $73,332.08.

waived its right to claim a default under the "due on sale clause" because it waited too long to do so.

On October 25, 2013, the parties entered into a Pretrial Order which set a trial date of February 4, 2014 for the Court's consideration of confirmation of the Plan but also agreed upon a deadline for Wells Fargo to file a motion for summary judgment. Thereafter the Debtors filed the *Objection to Proof of Claim Number 8* (hereinafter, the "Claim Objection"), *see* fn.3, *supra*, to which Wells Fargo responded by filing *its Response to Debtors' Objection to Claim No. 8* (hereinafter, the "Claim Objection Response"), ECF No. 86. In its Claim Objection, the Debtors restated their argument that the "due on sale clause" is unenforceable as to the Debtors and that they are entitled to cure the default on the mortgage by paying the arrears on the mortgage through and over the life of the Plan.

Thereafter, on January 2, 2014, Wells Fargo filed a *Motion for Summary Judgment,* ECF No. 89,[4] a *Memorandum of Law in Support of Wells Fargo's Motion for Summary Judgment,* ECF No. 89-2 (hereinafter, "Memorandum of Law")*, Wells Fargo's Local Rule 56(a)1 Statement (hereinafter, the "Rule 56(a)(1) Statement")*, ECF No. 89-3,[5] and an

---

[4]It is unclear why Wells Fargo filed a Motion for Summary Judgment in this Chapter 13 case and it is something of a misnomer since this is not an adversary proceeding and there is no judgment to be entered here. In its Memorandum of Law, Wells Fargo appears to be seeking a determination of the enforceability of the "due on sale clause" and a denial of confirmation of the Debtors' Plan. Wells Fargo has already made its legal arguments in support of its position in its Objection to Confirmation, *albeit* in a less comprehensive way. The Court, therefore, will deny the Motion for Summary Judgment and not directly rule on it as such but will consider the Motion and all related pleadings as a part of its consideration of the Objection to Confirmation and the Objection to Claim.

[5]Local Rule 56(a) of the Local Civil Rules of the United States District Court for the District of Connecticut (hereafter, "Local Rule(s)") supplements Fed. R. Civ. P. 56(c) by requiring, *inter alia*, that "[t]here shall be annexed to a motion for summary judgment a document entitled 'Local Rule 56(a)1 Statement,' which sets forth in separately numbered paragraphs meeting the requirements of Local Rule 56(a)3 a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried," supported by "(1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial.

*Appendix,* ECF No. 89-4 (with*, inter alia, Declaration of Clifford Esher,* attached). As a consequence, a First Amended Pretrial Order was entered by agreement of the parties giving the Debtors' until February 13, 2014 to respond to the Motion for Summary Judgment. Notwithstanding this agreement the Debtors have not done so.[6]

The Court, having considered the Debtors' Amended Plan, the Objection to Confirmation and the Debtors' Response, the Claim Objection and Claim Objection Response, and the Motion for Summary Judgment (pursuant to Fed. R. Civ. P. 56,[7] made applicable to this proceeding by Fed. R. Bank. P. 7056), as well as the files and records of the case, is positioned to rule at this time on each of the outstanding matters, all of which are dependent upon the Court's determination as to whether the Debtors defaulted or violated a "due on sale clause" and, if so, whether it can be waived through confirmation of their Plan.

### III. FACTUAL BACKGROUND

The Court's recitation of the background of this case and facts related to the Plan, the Claim Objection and the Motion for Summary Judgment as set forth hereinafter are substantially derived from the Movant's Rule 56(a)1 Statement in which Wells Fargo has set forth a concise statement of each material fact as to which it contends there is no genuine issue. Each statement of fact in the Rule 56(a)1 Statement is supported by a

---

[6]Upon the filing of a Rule 56(a)(1) Statement the party opposing a motion for summary judgment is then required to file a Rule 56(a)2 Statement stating, *inter alia*, whether each of the facts asserted in the Rule 56(a)1 Statement is admitted or denied, and include a section entitled "Disputed Issues of Material Fact" listing "each issue of material fact as to which it is contended that there is a genuine issue to be tried." Rule 56(a)2. In the absence of a Rule 56(a)2 Statement, "[a]ll material facts set forth in the Rule 56(a)1 Statement and supported by the evidence will be deemed admitted." Rule 56(a)1.

[7] Section (a) of Rule 56 directs that summary judgment shall enter "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

citation to an affidavit and documentary evidence represented as admissible at trial.

As noted, the Debtors have neither filed a response to the Motion for Summary Judgment nor a Rule 56(a)2 Statement.[8]  Nevertheless, the Court has taken into account in making its findings of fact the material assertions contained in the Rule 56(a)2 Statement, and all of the relevant pleadings of record, including, *inter alia,* the Debtors' Amended Plan, the Debtors' Response to the Objection to Confirmation and their Claim Objection.

1. The Debtors' property was conveyed to them as joint tenants on January 5, 1989.

2. On May 4, 1999, the Debtors quit-claimed an undivided 1% interest in the Property to themselves, and their son, Moises Espanol (hereinafter, "Moises"), and unto the survivor of them, and unto the heirs and assigns of the survivor of them.

3. On May 21, 1999, Debtors quit-claimed the balance of their interest in the Property to Moises.

4. On May 24, 1999, Moises signed an "Adjustable Rate Mortgage Note" with World Savings Bank, FSB (hereinafter, the "Note"), in which he promised to pay to "World Savings Bank, a Federal Savings Bank, . . . Its Successors and/or Assignees, or anyone to whom this Note is transferred" the Principal sum of $154,000.00, plus interest, in installments as set forth in the Note.

5. To secure the obligation to pay the Note, on May 24, 1999, Moises entered into

---

[8] The purpose of Local Rule 56(a) is to assist the Court in the efficient determination of motions for summary judgment and thereby conserve limited and valuable judicial resources. The Rule is intended "to aid the Court, by directing it to the material facts that the movant claims are undisputed and that the party opposing the motion claims are disputed." *Coger v. Connecticut*, 309 F.Supp.2d 274, 277 (D.Conn. 2004).

an open-end mortgage (hereinafter, the "Mortgage") in favor of "World Savings Bank, A Federal Savings Bank . . . , Its Successors or Assignees. . . ."

6.  The Mortgage was duly recorded in the official public records of the Coventry land records.

7.  The Mortgage contains in paragraph 26, terms providing for acceleration of payment upon the conveyance of the Property, commonly referred to as a "due-on-sale clause" providing in pertinent part:

> Acceleration of Payment of Sums Secured. Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. . . .
>
> If Lender exercises the option to require immediate payment in full Lender will give me notice of acceleration. If I fail to pay all sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

8.  Paragraph 10 of the Mortgage provides a "no future waiver" clause as follows:

> Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future.

9.  On June 14, 1999, Moises quit claimed all of his right, title and interest in the Property to the Debtors.[9]

10.  On December 5, 2012, in *World Savings Bank, FSB v. Espanol, Moises, et al*,

---

[9] Thereafter, on December 10, 2001, Moises filed a Chapter 7 bankruptcy petition (Case No. 01-51463) listing no real property in Schedule A. While not initially listed due to a claim of "inadvertence", World Bank was latter added as a creditor. In his bankruptcy case, Moises scheduled $1,296,609 in unsecured debts in Schedule F, and on April 9, 2002, received a discharge. However, in three separate Adversary Proceedings (Adv. Pro. Nos. 02-5004, 02-5010 & 02-5013) alleging, *inter alia*, false representations and fraud, debts totaling $600,900 were determined nondischargeable pursuant to §523(a).

Case No. TTD-CV-08-5002455 (hereinafter, the "Foreclosure Proceeding"), the Connecticut Superior Court for the Judicial District of Tolland at Rockville entered *a Judgment of Foreclosure by Sale* against Moises and the Debtors and set a sale date of March 9, 2013 for the Property. The debt was found to be $201,755.97, the fair market value $255,000, the appraiser's fee $640, the title search fee $225, and the attorney's fees $8,500.

11. In the Foreclosure Proceeding, filed because monthly mortgage payments were not being made, the Superior Court found that the Debtors "do not have standing to be heard and do not have standing to contest the debt."

## IV. DISCUSSION

*A. Whether the "Due on Sale Clause" is Subject to Modification or Remains Enforceable.*

It is transparently obvious that the Debtors, on May 21, 1999, transferred the Property to Moises for the purpose of allowing him to obtain a mortgage on the Property for which it can reasonably be surmised, the Debtors were ineligible. That is established by the time line set forth above, whereby within a period of little more than one month, the Property, which had been acquired ten years earlier by the Debtors, was transferred from the Debtors to Moises on May 21, 1999, was three days later, on May 24, 1999, encumbered by Moises by a note and mortgage, and shortly thereafter, on June 14, 1999, transferred back to the Debtors. These actions illustrate why "due on sale clauses" are contained in mortgage documents. As stated by Wells Fargo in its Memorandum of Law, p. 11, "[d]ue-on-sale clauses" play an important role in a home lending risk evaluation as they are designed to prevent a lender's collateral from falling into the hands of someone

other than the borrower whose character and credit history the lender evaluated in making its loan"; *In re Mullin,* 433 B.R. 1 (Bankr. D.Tex. 2010) ("these clauses are a 'fundamental aspect of a mortgagee's rights'") (citations omitted).

This Court finds persuasive the reasoning of former Chief United States Bankruptcy Judge Robert L. Krechevsky in *In re Martin*, 176 B.R. 675 (Bankr. D.Conn. (1995), and in this case determines that Bankruptcy Code §1322(b)(2)[10] bars the Debtors from modifying the "rights" of Wells Fargo's claim secured by their principal residence and that such limitations extend to any effort by the Debtors here to limit the ability of Wells Fargo to enforce the default provisions of the relevant "due on sale clause." Such conclusion is consistent with the U.S. Supreme Court's statement in *Nobelman v. American Savings Bank*, 508 U.S. 324, 329, 113 S. Ct. 2106 (1993) that the "rights" referred to in §1322(b)(2), are those "reflected in the relevant mortgage instruments, which are enforceable under [state law],"[11] and is not inconsistent with the Supreme Court's earlier holding in *Johnson v. Home State Bank*, 501 U.S. 78, 111 S. Ct. 2150 (1991), in which it held that a debtor whose *in personam* obligation under a mortgage had been discharged in an earlier Chapter 7 bankruptcy, could still treat the *in rem* claim of the mortgagee as a "claim" for bankruptcy

---

[10]This subsection provides, "(b) Subject to subsections (a) and (c) of this section, the plan may—(2**)** modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims. . . ." Bankruptcy Code §1325(a)(1) bars confirmation of a plan that does not comply with the provisions of this chapter (including the provision contained in §1322(b)(2)).

[11]Such provisions are recognized as permissible under Connecticut law, and not barred under federal law, subject to certain exclusions not relevant here. *See Olean v. Treglia*, 190 Conn. 756, 767, 463 A.2d 242 (1983) (such laws "serve a legal and useful purpose"). The Debtor has not argued in this case that such clauses are not enforceable under Connecticut law.

purposes and provide for its treatment in the debtor's later Chapter 13 plan.[12] Unlike here, in *Johnson*, there was no "due on sale clause" that the debtor was seeking to bar the creditor from enforcing, and the debtor there had been the party to the mortgage, so there was no issue as to the debtor's privity to the contract.

This Court is fully cognizant that courts are divided as to whether a debtor in default under a "due on sale clause" contained in a mortgage can cure such default without impermissibly modifying a creditor's rights. Nevertheless, and particularly in light of the timing and circumstances attending the Property transfers here, this Court aligns itself with the court in *In re Martin*, 176 B.R. 675, as well as the courts in *In re Mullin*, 433 B.R. 1 (Bankr. S.D. Tex. 2010) and *In re Tewell*, 355 B.R. 674 (Bankr. N.D. Ill. 2006), holding that a debtor seeking to cure such default pursuant to a Chapter 13 plan impermissibly violates Bankruptcy Code §1322(b)(2).

*B. Whether Wells Fargo Has Waived its Right to Assert a Default Under the "Due on Sale Clause."*

The Debtors also argue that the Wells Fargo has waived its right to assert a default under the "due on sale clause." First, the Debtors claim that Wells Fargo waived its right to raise the issue of default now because it allegedly did not raise the issue until after the Debtors filed bankruptcy. Secondly, the Debtors argue that Wells Fargo failed to give notification of acceleration of the debt as required in paragraph 26 of the mortgage document. A waiver has been defined as "the intentional relinquishment or abandonment of a known right or privilege. . . . Waiver does not have to be express, but may consist of

---

[12] This was referred to in the case as a "Chapter 20," as a way of describing a mortgagor whose Chapter 13 bankruptcy was preceded by one under Chapter 7.

acts or conduct from which waiver may be implied. . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so." *C.R. Klewin Northeast, LLC v. Bridgeport*, 282 Conn. 54, 87, 919 A.2d 1002 (2007) (citations omitted). Waiver can be a valid defense in a foreclosure action. *Id.*

For a number of reasons, Wells Fargo cannot be said to have waived the right to assert a default under the "due on sale clause." First, the relevant mortgage provision clearly states in paragraph 10 of the mortgage document that the failure of the Lender to assert its rights at a particular time does not bar it from raising such an argument thereafter. The Foreclosure Proceeding was brought on the basis of nonpayment of the mortgage debt. While the violation of the "due on sale clause" was not the original basis of the Foreclosure Proceeding, the matter of the violation of the "due on sale clause" implicitly arose during those proceedings in the context of Wells Fargo's argument that the Debtors, co-defendants with Moises in that proceeding, did not have standing to be heard and contest the amount of the debt. Furthermore, in none of the pleadings have the Debtors asserted any facts to support their assertion that Wells Fargo's failure to seek to enforce the "due on sale clause" earlier constituted an "intentional relinquishment or abandonment of a known right of privilege." In fact, the evidence of the foreclosure suggests the opposite. Indeed, until the Debtors filed bankruptcy there was no reason for Wells Fargo to raise as an additional basis of default the violation of the "due on sale clause," since whether Debtors were entitled to modify that clause only arose after their bankruptcy in the context of determining whether, through their proposed Chapter 13 Plan, they could "provide for the curing or waiving" of said default notwithstanding the prohibition of Bankruptcy Code §1322(b)(2).

-11-

Further, in arguing that Wells Fargo failed to follow the provisions of paragraph 26, the Debtors have ignored the fact that they were not parties to the mortgage or note. The "me" in the relevant acceleration provision which states, "[I] Lender exercises the option to require immediate payment in full, Lender will give *me* notice of acceleration" (emphasis added), is Moises, not the Debtors. Only a party to the contract or intended third party beneficiary has standing to challenge or seek to enforce the terms of the mortgage. "It is well settled that one who [is] neither a party to a contract nor a contemplated beneficiary thereof cannot sue to enforce the promises of the contract. . . ." (Internal quotation marks omitted.) *Tomlinson v. Board of Education*, 226 Conn. 704, 718, 629 A.2d 333 (1993).

The Court notes that the Debtors have cited no cases holding that under similar circumstances, a mortgage lender had waived its right to invoke a "due on sale clause" as a basis for a default. And, in *In re Martin*, 176 B.R. 677, previously noted as persuasive in this matter, Judge Krechevsky refused to consider "waiver" as a valid basis to override the bar contained in Bankruptcy Code §1322(b)(2) that limits the ability of a debtor to modify the rights of a secured creditor in real property that is the debtor's principal residence.

## V.  SUMMARY, CONCLUSION AND ORDER

For all of the above stated reasons, and more specifically because Bankruptcy Code §§1322(b)(2) and 1325(a)(1) bar the Debtors from modifying by operation of a Chapter 13 Plan the "rights" of Wells Fargo as a holder of a claim secured by a debtor's principal residence, *see* fn 10, *supra*, and because such limitation extends to any effort by the Debtors' Plan to limit the ability of Wells Fargo to enforce the default provisions of a "due

on sale clause," confirmation of the Debtors' Plan must be denied. Nor can the Debtors achieve such modification through a back door by their Objection to Wells Fargo's claim.

Finally, while the Court has noted and relied on Wells Fargo's unopposed Motion for Summary Judgment, particularly as to certain uncontested facts set forth in the Rule 56(a)1 Statement, that motion is procedurally deficient. And, this Court's determination that Wells Fargo's Objection to Confirmation must be sustained as ordered hereinafter fully disposes of the Motion for Summary Judgment and renders it superfluous.

In accordance with the above,

**IT IS HEREBY ORDERED** that Wells Fargo's *Objection to the Debtors' [First Amended] Chapter 13 Plan*, ECF No. 32, is **SUSTAINED**, and confirmation of that Plan is **DENIED**, and

**IT IS FURTHER ORDERED** that the Debtors' *Objection to Proof of Claim No. 8*, ECF No. 83, objecting to the claim of Wells Fargo, is **OVERRULED**, and

**IT IS FURTHER ORDERED** that Wells Fargo's Motion for Summary Judgment, ECF No. 89, is **DENIED**.

Dated: April 22, 2014                                                          BY THE COURT

Albert S. Dabrowski
Chief United States Bankruptcy Judge